UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUSTIN M. SCOTT :

Plaintiff, : Civil Action No. 11-11082-RWZ

v. :

PUTNAM, LLC D/B/A PUTNAM INVESTMENTS, PUTNAM INVESTMENTS, INC., PUTNAM INVESTMENT MANAGEMENT, LLC, MARSH & MCLENNAN COMPANIES, INC., JOHN DOE PLAN ADMINISTRATORS 1-12 :

Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR PARTIAL DISMISSAL**

James R. Carroll
Peter Simshauser
Eben P. Colby
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800

Counsel for Defendants
Putnam Investment Management, LLC,
Putnam U.S. Holdings I, LLC and
Marsh & McLennan Companies, Inc.

Dated: June 23, 2011

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................ii

PRELIMINARY STATEMENT....................1

BACKGROUND....................2

1. Scott Deferred Compensation In Several Plans....................2

2. Scott's 2003 Termination For Cause....................2

3. Scott's Complaint Alleges State Law Claims To Recover From ERISA-Governed Plans....................3

ARGUMENT....................6

I. SCOTT'S STATE LAW CLAIMS THAT RELATE TO ERISA-GOVERNED PLANS ARE PREEMPTED....................6

A. ERISA Contains Two Independent Provisions With Preemptive Force....................6

B. The Putnam Investments Profit Sharing Retirement Plan (PSRP), Putnam Investments, LLC Executive Deferred Compensation Plan (EDCP), And Putnam Investments, LLC Voluntary Deferral Plan (VDP) Are ERISA-Governed Plans....................7

C. The Complaint's Claims Concerning The PSRP, EDCP and VDP Are Preempted....................11

CONCLUSION....................12

**TABLE OF AUTHORITIES**

**CASES** **PAGE(S)**

Bogan v. Putnam Invs., Inc.,
No. 00-CV-10169-RWZ (D. Mass. May 21, 2001) ............ 9, 10, 11

Beddall v. State Street Bank & Trust Co.,
137 F.3d 12 (1st Cir. 1998) ............ 2

Danca v. Private Health Care Sys., Inc.,
185 F.3d 1 (1st Cir. 1999) ............ 6

Edes v. Verizon Commc'ns Inc.,
417 F.3d 133 (1st Cir. 2005) ............ 4

Janus Capital Group, Inc. v. First Derivative Traders.,
564 U.S. ___, 2011 WL 2297762 (June 13, 2011) ............ 2, 3

Hampers v. W.R. Grace & Co.,
202 F.3d 44 (1st Cir. 2000) ............ passim

Kemmerer v. ICI Americas Inc.,
70 F.3d 281 (3d Cir. 1995) ............ 8

McMahon v. Digital Equip. Corp.,
162 F.3d 28 (1st Cir. 1998) ............ 7

Metropolitan Life Ins. Co. v. Taylor,
481 U.S. 58 (1987) ............ 6, 11

Perry v. New England Business Serv., Inc.,
347 F.3d 343 (1st Cir. 2003) ............ 4

Pilot Life Ins. Co. v. Dedeaux,
481 U.S. 41 (1987) ............ 6

Senior v. NSTAR Elec. & Gas Corp.,
372 F. Supp. 2d 159 (D. Mass. 2005) ............ 12

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
551 U.S. 308 (2007) ............ 4

Turner v. Fallon Cmty. Health Plan, Inc.,
127 F.3d 196 (1st Cir. 1997), cert. denied 523 U.S. 1072 (1998) ............ 11

Zipperer v. Raytheon Co.,
493 F.3d 50 (1st Cir. 2007) ............ 12

**STATUTES** **PAGE(S)**

29 U.S.C. § 1002....................7, 8

29 U.S.C. § 1132....................passim

29 U.S.C. § 1144....................passim

Defendants Putnam Investment Management, LLC and Putnam U.S. Holdings I, LLC (sued herein as Putnam, LLC and Putnam Investments, Inc.) (collectively "Putnam"), and Marsh & McLennan Companies, Inc. ("MMC," and with Putnam, "Defendants"), respectfully submit this memorandum of law in support of their motion for partial dismissal of the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Plaintiff Justin M. Scott has asserted state law claims seeking to recover balances in ten retirement, deferred compensation and bonus plans sponsored by Putnam and MMC (the "Plans"). All balances in the Plans relating to Scott were withheld following his termination for cause. Scott, a highly compensated fiduciary entrusted with managing hundreds of millions of dollars of other people's money, was found to have engaged in improper market timing trading for his account in Putnam mutual funds. Scott's selfish and egregious breaches of his fiduciary duty caused enormous damage to Putnam. He was sued by the United States Securities and Exchange Commission, and he was the subject of a regulatory action by the Massachusetts Securities Division. He was subsequently banned from the mutual fund industry for a year, and he has paid more than a million dollars in fines and restitution to resolve the regulatory actions.

At least three of the ten Plans from which Scott seeks recovery are employee pension benefit plans that are governed by ERISA.[1] It is beyond dispute that Scott's state law claims to recover amounts in these ERISA-governed Plans are preempted by ERISA. These claims should be dismissed.

---

[1] The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

## BACKGROUND

### 1. Scott Deferred Compensation In Several Plans

Scott alleges that he formerly was a "well-known" Putnam portfolio manager, entrusted to manage the money of millions of individual and institutional investors in Putnam mutual funds. (Compl. ¶¶ 9-11.)[2] Scott worked at Putnam from 1988 to 2003, and was paid through a combination of base salary, bonuses, stocks and options. (¶ 14.) He participated in the ten Plans, which were sponsored by Putnam and MMC. (¶ 15.) During and after his employment, he deferred stock, options, bonuses and profit sharing amounts under these Plans. (¶ 23.)

### 2. Scott's 2003 Termination For Cause

In late 2003, the SEC commenced an investigation into market timing at a number of mutual fund complexes, including Putnam.[3] (¶ 38.) The SEC and Massachusetts Securities

---

[2] For purposes of this Rule 12(b)(6) motion, we accept the Complaint's factual allegations as true. Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998). If the matter proceeds, however, Defendants will demonstrate that: (1) Scott knowingly engaged in highly improper trading in mutual funds that he managed, to enrich himself at the expense of the funds' other shareholders, in breach of his fiduciary obligations; (2) Scott was terminated for cause and has forfeited, as a matter of law, the Plan balances; and (3) Scott is liable to Putnam for the losses that it suffered as a result of his malfeasance.

[3] Although there is no single standard definition, "market timing" generally refers to short-term trading in mutual funds to take advantage of "stale" prices of mutual fund shares. As the Supreme Court recently explained:

> Market timing is a trading strategy that exploits time delay in mutual funds' daily valuation system. The price for buying or selling shares of a mutual fund is ordinarily determined by the next net asset value (NAV) calculation after the order is placed. The NAV calculation usually happens once a day, at the close of the major U.S. markets. Because of certain time delays, however, the values used in these calculations do not always accurately reflect the true value of the underlying assets. For example, a fund may value its foreign securities based on the price at the close of the foreign market, which may have occurred several hours before the calculation. But events might have taken place after the close of the foreign market that could be expected to affect their price. If the event were

*(cont'd)*

Division brought civil enforcement actions against Putnam, which Putnam settled by agreeing to pay substantial fines and to reimburse all affected mutual fund shareholders for any losses.[4]

The SEC and Massachusetts Securities Division also brought civil and administrative actions against Scott for "alleged improper trading in Putnam funds." (¶ 50.) Scott settled those matters individually, paying a total of more than $1 million and accepting a suspension from association with any investment adviser.[5]

On December 1, 2003, after placing Scott on leave, Putnam terminated his employment. (¶ 55.) In 2007, after the regulatory actions against Scott were resolved, Putnam placed a for-cause termination letter in Scott's personnel file. (¶ 61.)

**3. Scott's Complaint Alleges State Law Claims To Recover From ERISA-Governed Plans**

Scott seeks recovery of the "compensation, deferred compensation, bonuses, retirement benefits, losses and/or reduced gains" that he contends are being wrongfully withheld. (E.g., ¶ 71.) All of the Complaint's claims are pled under state law, for breach of contract,

*(cont'd from previous page)*

> expected to increase the price of the foreign securities, a market-timing investor could buy shares of a mutual fund at the artificially low NAV and sell the next day when the NAV corrects itself upward.

Janus Capital Grp., Inc. v. First Derivative Traders, 564 U.S. ___, 2011 WL 2297762, at *3 n.1 (June 13, 2011).

4 Putnam Inv. Mgmt., LLC, Investment Advisers Act Release No. 2192, Investment Company Act Release No. 26,255, SEC Administrative Proceeding File No. 3-11317 (Nov. 13, 2003); Putnam Inv. Mgmt., LLC, Investment Advisers Act Release No. 2226, Investment Company Act Release No. 26,412, SEC Administrative Proceeding File No. 3-11317 (Apr. 8, 2004); Supplemental Consent Order, Putnam Inv. Mgmt., LLC, Mass. Sec. Div. Docket No. E-2003-061 (Apr. 8, 2004), available at http://www.sec.state.ma.us/sct/sctpdf/ptnsuppconsent.pdf.

5 Consent Of Defendant Justin Scott, SEC v. Scott, No. 03-12082-EFH (D. Mass. May 10, 2007), ECF No. 199; Final Judgment As To Defendant Justin Scott, SEC v. Scott, No. 03-12082-EFH (D. Mass. June 4, 2007), ECF No. 200.

breach of the covenant of good faith and fair dealing, and promissory estoppel. The Complaint lists by name the ten Plans as to which Scott seeks recovery. (¶15.) These include the Putnam Investments Profit Sharing Retirement Plan ("PSRP"), the Putnam Investments, LLC Executive Deferred Compensation Plan ("EDCP"), and the Putnam Investments, LLC Voluntary Deferral Plan ("VDP"). (¶¶ 15(iii), (iv) and (vii).)

Each of these three Plans provides that it is intended to be ERISA-governed.

**The PSRP Is An ERISA Pension Plan.** The PSRP is an ERISA pension plan to which participants may contribute a portion of their salaries to tax-deferred accounts for retirement. The PSRP provides, in its statement of purpose, that it "is an employee benefit plan intended to qualify as a profit-sharing plan under Code Section 401(a), with a qualified cash or deferred arrangement under Code section 401(k), and to comply with applicable provisions of ERISA." PSRP § 1.2.[6]

**The EDCP And VDP Are ERISA "Top Hat" Plans.** The terms of the EDCP and VDP show that both are intended to be ERISA "top hat" plans, which allow a select group of

---

[6] A copy of the PSRP, as amended and restated as of January 1, 2001, is attached as Exhibit A. The terms of the Plans referenced in the Complaint are properly considered on this motion to dismiss. "Where, as here, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Edes v. Verizon Commc'ns Inc., 417 F.3d 133, 137 n.4 (1st Cir. 2005) (considering terms of ERISA plan document) (internal quotation marks omitted); Perry v. New England Business Serv., Inc., 347 F.3d 343, 345 & n.2 (1st Cir. 2003) (district court ruling on motion to dismiss in ERISA action for benefits did not err in considering terms of plan); see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Putnam management or highly compensated executives to contribute a portion of their earned and payable salaries to tax-deferred accounts for retirement.[7] In this regard, the EDCP provides:

> [The EDCP] is unfunded and is maintained for the purpose of providing deferred compensation to a select group of management and highly compensated employees of the Company and its Subsidiaries within the meaning of the United States Code of Federal Regulations Section 2520.104-23 and Sections 201(2), 301(a)(3) and 401(a)(1) of [ERISA].

EDCP § 1.2.[8]

In an identical provision, the VDP also states that it is ERISA-governed:

> [The VDP] is unfunded and is maintained for the purpose of providing deferred compensation to a select group of management and highly compensated employees of the Company and its Subsidiaries within the meaning of the United States Code of Federal Regulations Section 2520.104-23 and Sections 201(2), 301(a)(3) and 401(a)(1) of [ERISA].

VDP § 1.2.

---

7 Attached as Exhibits B and C are copies of the EDCP, as effective as of January 1, 1994 (Ex. B), and as amended and restated as of January 1, 2008 (Ex. C). Attached as Exhibits D and E are copies of the VDP, as effective as of December 1, 2005 (Ex. D), and as restated as of December 1, 2008 (Ex. E). Because Scott's claims are to recover from the Plans as currently in effect, our discussion herein focuses on, and cites to, the current EDCP (Ex. C) and VDP (Ex. E).

8 The 1994 EDCP contains a substantively identical statement of intent:

> The [EDCP] is intended to be 'a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees' within the meaning of Sections 201(2) and 301(a)(3) of [ERISA] and shall be interpreted and administered to the extent possible in a manner consistent with that intent.

1994 EDCP, art. I (Ex. B).

## ARGUMENT

### I. SCOTT'S STATE LAW CLAIMS THAT RELATE TO ERISA-GOVERNED PLANS ARE PREEMPTED

The Complaint only asserts state law claims. However, all state law claims against the three ERISA-governed Plans are preempted as a matter of law and should be dismissed.

#### A. ERISA Contains Two Independent Provisions With Preemptive Force

Both of ERISA's provisions with preemptive effect are applicable here. First, ERISA includes a provision which creates a cause of action to recover from an ERISA plan; this provision has been held to be the exclusive means of seeking recovery from an ERISA plan, and thus is preemptive of state law claims. Specifically, under 29 U.S.C. § 1132(a)(1)(B), a plaintiff may file an action "to recover benefits due to him under the terms of his plan. . . ." Established Supreme Court and First Circuit precedents hold that this is the exclusive means for seeking to recover benefits from ERISA plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54-56 (1987); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987) ("[A] suit by a beneficiary to recover benefits from a covered plan . . . falls directly under § 502(a)(1)(B) of ERISA [29 U.S.C. § 1132(a)(1)(B)], which provides an exclusive federal cause of action for resolution of such disputes.") (emphasis added); Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 5 (1st Cir. 1999) (federal remedies are the "exclusive civil enforcement provisions" available under ERISA) (emphasis added).

The second ERISA provision with preemptive force is its general preemption clause, 29 U.S.C. § 1144(a). It provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . .

The term "State laws" encompasses any statutory or common law theory of recovery, because ERISA defines this term as broadly as possible:

> The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.

29 U.S.C. § 1144(c)(1).

As the First Circuit has recognized, under this provision, "ERISA preemption analysis . . . involves two central questions: (1) whether the plan at issue is an 'employee benefit plan' and (2) whether the cause of action 'relates to' this employee benefit plan." McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998); accord Hampers v. W.R. Grace & Co., 202 F.3d 44, 48 (1st Cir. 2000). Accordingly, if the Court finds that any of the Plans is ERISA-governed, all state law claims relating to such Plans are preempted.

### B. The PSRP, EDCP And VDP Are ERISA-Governed Plans

The PSRP, EDCP and VDP fall within ERISA's definition of employee pension benefit plan. ERISA defines an "employee pension benefit plan" as:

> [A]ny plan, fund, or program . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A) (emphasis added). By their "express terms," three of the Plans identified in the Complaint -- the PSRP, the EDCP and the VDP -- are ERISA plans.[9] It is readily apparent

---

[9] This motion addresses only whether the plans alleged in the Complaint are ERISA plans by their "express terms." As the statutory definition provides, a plan also may be ERISA-governed if "surrounding circumstances" show it, in practice, to provide retirement or post-termination income. Although such an inquiry is beyond the scope of this motion, Defendants reserve the right to raise this issue by an alternative means (e.g., summary judgment motion).

from reviewing them that each of these three Plans provides for the income deferral that is characteristic of an ERISA employee pension benefit plan.

**The PSRP.** The PSRP is an ERISA pension plan by which participants may contribute a portion of their earned and payable salaries to tax-deferred accounts for retirement. By its express terms, the PSRP "is an employee benefit plan intended to qualify as a profit-sharing plan under Code Section 401(a), with a qualified cash or deferred arrangement under Code section 401(k), and to comply with applicable provisions of ERISA." PSRP § 1.2 (Ex. A). In addition, the PSRP provides generally for distribution upon retirement or other termination of employment. Id., art. 10. Thus, Section 10.1 of the PSRP states:

> 10.1 Distribution Upon Retirement or Other Termination of Employment. A participant who retires or who otherwise terminates employment (for reasons other than death) may elect to receive distribution of the vested portion of the participant's accounts at any time after the earlier of termination of employment or reaching age 70 ½.

In short, the PSRP is a prototypical "defined contribution plan," governed by ERISA 29 U.S.C. § 1002(34) (providing that "'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account . . . .").

**The EDCP and VDP.** The EDCP and the VDP are ERISA top hat plans. Top hat plans, which limit participation to a small group of senior executives and employees, are subject to ERISA's enforcement provisions, including the civil enforcement provision, 29 U.S.C. § 1132, and ERISA's preemption provision, 29 U.S.C. § 1144(a), but are exempt from ERISA's participation and vesting rules, ERISA's funding rules and ERISA's rules of fiduciary responsibility. Hampers, 202 F.3d at 46 n.3; see Kemmerer v. ICI Americas Inc., 70 F.3d 281 (3d Cir. 1995) (executive deferred compensation plan was a top hat plan and holding that "top hat plans clearly are subject to ERISA").

This Court previously held that the EDCP is an ERISA-governed top hat plan. Bogan v. Putnam Invs., Inc., No. 00-CV-10169-RWZ, slip op. (D. Mass. May 21, 2001). In Bogan, as here, Putnam moved to dismiss on ERISA preemption grounds a former employee's state law claims seeking recovery from the EDCP. The Court held that the EDCP is ERISA-governed and that the claims relating to it accordingly were preempted:

> [T]he Executive Deferred Compensation Plan, does . . . fall within the scope of ERISA regulation. Plans such as this, which are unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, are exempted from several types of ERISA regulation. See, 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1). These so-called "top hat" plans are not, however, exempted from ERISA's administration and enforcement provisions, 29 U.S.C. §§ 1131-1145, including ERISA's preemption provision, § 1144. Defendant's motion is, therefore, allowed with respect to those of Plaintiff's claims that relate to the Executive Deferred Compensation Plan.

Bogan, slip op. at 5-6 (citations omitted).[10]

The VDP likewise is an ERISA-governed top hat plan, as its language demonstrates. First, as noted, the VDP states that it is "maintained for the purpose of providing deferred compensation to a select group of management and highly compensated employees of the Company and its Subsidiaries within the meaning of . . . [ERISA]." VDP § 1.2 (Ex. E). Second, the VDP's provision setting forth the information to be furnished to any claimant whose claim is denied, § 10.1(d), provides that such information must include "a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review." (Emphasis added.) Third, the VDP includes, at § 4.1 (entitled

---

10 The EDCP permits participants to elect "to have payments made under this Plan commence in January of the year following Retirement or the fifth anniversary of the date of Retirement; provided, however, if a Participant experiences a Termination of Employment that is neither a Retirement nor is on account of a Total Disability, payment shall be made in a single lump sum payment within 60 days from the date of the Termination of Employment (or, if Termination occurs in November or December, the following January)." EDCP § 7.1 (Ex. C).

"Eligibility to Participate"), an acknowledgement that the Plan is exempt from ERISA's provisions that are not applicable to top hat plans.[11] By implication, this means, consistent with its above-discussed provisions, that the VDP is governed by ERISA in other respects -- i.e., by the ERISA provisions that apply to top hat plans.[12] Additional terms in the VDP further demonstrate that it is designed to enable select senior executives and highly-compensated employees to defer income until after their retirement or termination.[13]

Although in Bogan the Court found that a bookkeeping account then in existence known as the Voluntary Deferral Plan did not qualify as an ERISA plan, that conclusion does not apply to the VDP that is at issue in this case. As the terms of the VDP state, it is a distinct top

---

11 Section 4.1 states in this respect: "By participating in the Plan, each Participant acknowledges the Plan is not subject to certain provisions of ERISA, including the participation, vesting, funding, spousal benefits and fiduciary responsibility provisions."

12 The EDCP, which the Court held in Bogan to be an ERISA-governed top hat plan, includes similar language as the portions of the VDP identified immediately above. As restated, the EDCP provides that it is "maintained for the purpose of providing deferred compensation to a select group of management and highly compensated employees of the Company and its Subsidiaries within the meaning of . . . [ERISA]." EDCP § 1.2 (Ex. C). And the EDCP provides that a decision on review of a denial of benefits must include "a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review." Id. § 10.3. The EDCP also includes an acknowledgement that it "is not subject to certain provisions of ERISA, including the participation, vesting, funding, spousal benefits and fiduciary responsibility provisions." Id. § 4.1.

13 The VDP permits participants to "irrevocably elect to defer payments" to commence "on a date specified by the Participant." VDP §§ 5.1 and 6.1 (Ex. E) (emphasis added). As evidenced by the VDP's statements showing that it is intended to be ERISA-governed, this election is designed to result in deferral until after a participant retires or is terminated. If a participant retires, payments "shall commence in the January following the year of Retirement," i.e., payments may begin prior to the date selected by the employee, but still after the participant retires. Id. § 6.1. If a participant terminates in a manner that is not a retirement, payment "shall be made in a single lump sum payment in accordance within Section 6.8," i.e., after separation. Id.

hat plan created in 2005, four years after the Court decided Bogan in 2001 (the VDP was restated effective as of December 1, 2008).

### C. The Complaint's Claims Concerning The PSRP, EDCP and VDP Are Preempted

Each of the claims asserted in the Complaint is pled under state law -- for breach of contract (Counts I-III), breach of the covenant of good faith and fair dealing (Count IV), and promissory estoppel (Count V) -- and is based on Defendants' alleged failure to pay to Scott amounts in the Plans. As such, each of the claims, inasmuch as they relate to the ERISA Plans, is preempted by both 29 U.S.C. § 1132(a)(1)(B) and § 1144(a), and should be dismissed. The claims are preempted by 24 U.S.C. § 1132(a)(1)(B) because it provides the exclusive vehicle for any attempt to recover from an ERISA-governed plan. Metro. Life Ins. Co., supra.

Also, because Scott's claims "relate to" ERISA plans, they are preempted by 29 U.S.C. § 1144(a). Hampers, 202 F.3d at 53-54 (noting that "cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action"). As shown, this Court recognized in Bogan that all state law claims related to ERISA-governed plans are preempted by this provision. Furthermore, numerous additional courts have held that the claims asserted by Scott are subject to ERISA preemption.

- **Breach Of Contract.** Hampers, 202 F.3d at 51, 52-54 (plaintiff's state law breach of contract claims were preempted under both 29 U.S.C. §§ 1132(a)(1)(B) and 1144(a)).
- **Breach Of The Covenant Of Good Faith And Fair Dealing.** Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 199 (1st Cir. 1997), cert. denied 523 U.S. 1072 (1998) (claims for breach of the covenant of good faith and fair dealing was preempted because "[i]t would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for breach of obligations under that plan").

- **Promissory Estoppel.** Senior v. NSTAR Elec. & Gas Corp., 372 F. Supp. 2d 159, 164 (D. Mass. 2005) (claim for promissory estoppel based on employer's alleged nonpayment of benefits due under collective bargaining agreements was preempted); see Zipperer v. Raytheon Co., 493 F.3d 50 (1st Cir. 2007) (former employee's state law claim for equitable estoppel was preempted under ERISA).

## CONCLUSION

For all of the foregoing reasons, Defendants' motion should be granted in its entirety and all counts of the Complaint insofar as they relate to benefit plans governed by the ERISA should be dismissed.

Dated: June 23, 2011
Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll

James R. Carroll (BBO #554426)
Peter Simshauser (BBO #665153)
Eben P. Colby (BBO #651456)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts 02108
(617) 573-4800
Email: james.carroll@skadden.com

Counsel for Defendants
Putnam Investment Management, LLC
Putnam U.S. Holdings I, LLC and
Marsh & McLennan Companies, Inc.

## CERTIFICATE OF SERVICE

I, James R. Carroll, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 23, 2011.

Dated: June 23, 2011

/s/ James R. Carroll
James R. Carroll